**UNITED STATES of America,**
**Appellee,**

v.

**Thomas M. FAHEY, Appellant.**

**No. 391, Docket 74–2108.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 13, 1974.

Decided Dec. 6, 1974.

Dante M. Scaccia, Syracuse, N. Y. (Love, Balducci & Scaccia, Syracuse, N. Y., on the brief), for appellant.

Eugene Welch, Asst. U. S. Atty., Northern District of New York, Syracuse, N. Y. (James M. Sullivan, Jr., U. S. Atty., for the Northern District of New York, Syracuse, N. Y., on the brief), for appellee.

Before FRIENDLY, FEINBERG and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

Thomas M. Fahey appeals from a judgment of conviction [1] entered on July

---

1. Appellant was sentenced to three years imprisonment on each of counts one and two, to run concurrently with each other, and sentenced to pay a committed fine of $10,000 on each of counts one and two. Execution of the prison sentence was suspended and defendant placed on probation for three years.

19, 1974 after a trial before Hon. Lloyd F. MacMahon and a jury on two counts of income tax evasion for the calendar years 1966 and 1967 in violation of 26 U.S.C. § 7201.[2]

Defendant, a hospital administrator by training and profession, conceived the idea in late 1964 of converting an existing structure of a hospital that was being abandoned into a large nursing home. The hospital board agreed to sell the hospital to Fahey if he could procure the necessary financing. The Marine Midland Bank of Syracuse indicated that it would enlist several banks in a participating mortgage if Fahey could find partners to provide equity capital and if he could obtain the required regulatory approvals from local, state and federal agencies.

Fahey then arranged with Culotti Construction Company ("Culotti") for that company to place him on its payroll as soon as a partnership acceptable to the bank would be formed, on the understanding that the Culotti firm would receive the construction contract.

On November 23, 1964 a partnership acceptable to the bank was formed consisting of Fahey, Theodore G. Metzger, Walker McKinney and Dr. George Simpson. Under that agreement a general partnership was formed. The partners were to share in profits and losses in the following percentages: Fahey, 45%; Metzger, 5%; McKinney, 42.5%; Simpson, 7.5%. There was to be no drawing or salary to any partner. An option on the hospital property was taken by the partnership.

Fahey went on the payroll of Culotti in December 1964 and started to work on architectural changes and governmental approvals. He continued on the Culotti payroll throughout 1965.

---

2. 26 U.S.C. § 7201 provides:

"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

During 1965 two new partnership agreements were executed, one in January and one in November.

The January agreement was drafted as a limited partnership. Under that agreement, with McKinney as the general partner, the profit percentages remained the same, but Fahey and Metzger were not to be responsible for losses, the burden falling 85% on McKinney and 15% on Simpson. It provided: "Thomas Fahey or his successor as administrator shall be paid a salary of $20,000 per year. . . . Such salary, for purposes of division of partnership's net profits and losses, shall be treated as an expense of the partnership."

Although the limited partnership agreement was signed on January 4, 1965, Fahey was not paid by the partnership in 1965 and he remained on the Culotti payroll that whole year.

The state regulatory authorities refused to accept a limited partnership as the operator of a nursing home, and, accordingly, the general partnership was reestablished on November 5, 1965. This agreement (Ex. 19) continued the profit and loss provisions of the January agreement with again a provision for a salary of $20,000 to appellant in the language previously quoted. Appellant continued, nevertheless, to draw his salary from Culotti.

On April 6, 1966 appellant wrote to McKinney that since Culotti could no longer justify his salary he would require that the partnership assume the expense of his "salary" until July, noting that if Culotti had been able to continue the "salary" it would have been added to construction expense "so that the net expense would have been the same but would have come out of another pocket." (Ex. 28, A 460).

McKinney agreed to contribute capital to the partnership and appellant began to draw monthly checks to himself from the partnership, beginning in April 1966 while continuing to receive a salary from Culotti.

On the advice of an accounting firm in Syracuse the payments to Fahey by the partnership were treated as salary, and Federal and State Income Taxes were withheld.

Later in 1966 Ernst and Ernst succeeded the former accountants for the partnership and determined to stop withholding Federal Insurance Contribution Act (FICA) and income taxes. They prepared a form for claiming a 1966 FICA tax refund, which appellant signed on November 2, 1966, advising that "[t]he partnership erroneously withheld FICA tax from the salary of Thomas M. Fahey, a bona fide partner of the firm" and noted that "since the partner is required to and will pay self-employment tax, refund of the erroneous payment of $554.50 is requested." (Ex. 27, A 457).

Construction started in September 1966 and lasted until May 1967. In the calendar year 1966 appellant drew $10,600 from Culotti and $14,999 from the partnership. Appellant continued on the Culotti payroll until May 1967. For the calendar year 1967 he received $8,330 from Culotti and $11,666.62 from the partnership.

On his 1966 return appellant described his employer as "Culotti Construction Co." and reported a salary of $10,600 with "other income" shown as $261. By virtue of deductions and exemptions, the taxable income was reduced to $3,742, on which a tax of $419 was computed as due. On his 1967 return appellant again showed Culotti as his employer and his salary as $16,178, with "other income" shown as $905. By means of deductions and exemptions the taxable income was reduced to $7,707 and the total tax computed as $1,324. No mention was made of Walker McKinney Associates, the partnership, on either return, nor was any income from that source reported for either year.

The Government contended that the unreported gross income from the partnership for the year 1966 was $14,994 and for 1967 was $11,666.22. The Government claimed additional taxes due for 1966 of $2,351.50 and for 1967 of $2,880.50.

The trial resulted in a verdict of guilty on each count for wilfully attempting to evade and defeat a tax for each year. Judge MacMahon refused to set aside the verdict.

Appellant contends that the partners had agreed among themselves that the payments to him were to be "draws" rather than salary, that as a matter of law the payments from the partnership were therefore not income and that the indictment should have been dismissed. The Government notes that appellant's counsel conceded at the trial that the payments in question were income. No request to charge otherwise was requested. On the basis of the concession, the District Court quite properly charged that the defendant had received income from the partnership during the taxable years which he did not report in each of the taxable years.

■ Appellant cannot now raise on appeal a point he conceded below, unless the payments involved could not be income as a matter of law. *See* United States v. Wright, 466 F.2d 1256 (2 Cir. 1972).

■ We have no doubt, in any event, that the payment of salary to a partner which cannot be construed as a return of his capital is income to him. See 26 U.S.C. § 707(c) re guaranteed payments to a partner; Rogers v. C.I.R., 281 F.2d 233 (4 Cir. 1960) (under the 1939 code without benefit of § 707(c)). See Miller v. Commissioner, 52 T.C. 752, 758 (1969); Falconer v. Commissioner, 40 T.C. 1011 (1963). Even if partnership debt is equated to equity, appellant contributed no capital and was not responsible for any loss.[3]

■ Appellant further complains that the court failed to charge that the jury could find that appellant relied on advice from Ernst and Ernst that the payments from the partnership were not income, and that the jury should have considered this in determining wilfulness.

While the March 29, 1968 as well as the April 2, 1968 letter of instruction from the accountants was hardly a model of clarity, neither lends significant support to the contention that appellant was advised that his payments from the partnership were not income. If a proper request to charge had been made within the fair bounds of reasonable interpretation of the "advice," the court would presumably have given it. But no such request was made nor was any exception taken to the charge which failed to mention the purported accountants' advice and the respective contentions concerning it. F.R.Crim.P. 30. Counsel for the appellant placed emphasis in his summation on the defense of "advice," and the judge charged specifically that "a good faith misunderstanding of the defendant's liability for taxes is not an attempt to evade and defeat taxes." We cannot find the failure to charge, in the circumstances, to be plain error.

■ The more serious contention is that the Government failed to prove the intent of appellant wilfully to evade the tax so that a juror could reasonably be convinced of his guilt beyond a reasona-

---

3. 26 U.S.C. § 707 provides: *"Transactions between partners and partnership.*

\* \* \* \* \* \*

"(c) *Guaranteed payments.*—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses)."

S.Rept.No.1622 to accompany H.R. 8300, 83d Cong., 2d Sess., p. 387 (1954), contains the following explanation:

"Subsection (c) provides a rule with respect to guaranteed payments to members of a partnership. A partner who renders services to the partnership for a fixed salary, payable without regard to partnership income, shall be treated, to the extent of such amount, as one who is not a partner, and the partnership shall be allowed a deduction for a business expense. The amount of such payment shall be included in the partner's gross income, and shall not be considered a distributive share of partnership income or gain. A partner who is guaranteed a minimum amount for his services shall be treated as receiving a fixed payment in that amount."

ble doubt. See United States v. De Sisto, 329 F.2d 929, 932 (2 Cir. 1964), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747. We have concluded that sufficient evidence of intent was established under that standard of proof.

The partnership papers described the payments to appellant as "salary" which was to be treated as an expense of the partnership. The "salary" was to be paid not only to Fahey but, as well, to any successor of Fahey as administrator. In a loan application to the Marine Midland Bank dated August 15, 1966, appellant described his annual income as a salary of $20,000. In a similar loan application dated January 1, 1968 he described his annual income as salary $20,-000 "plus a percentage of profit." As we have noted, in April 1966, he had asked that the expense of the salary he had been receiving from Culotti be assumed by the partnership.

While the letter to appellant from Ernst and Ernst called attention only to Schedule K column 4 of the Partnership Return of Income for the year ended December 31, 1966 reflecting "Partners Share of Income, Credits and Deductions," the return itself prepared by Ernst and Ernst clearly showed in column 6 "Payments to partners—salaries and interest" a payment to Thomas Fahey of $14,994. The same comment applies to the 1967 partnership return except that salary to Fahey is listed as $11,666.62. Fahey received the partnership returns for each year and signed at least the 1967 partnership return.

It was also a circumstance for consideration of the jury that appellant failed to apply for the refund of the self-employment tax erroneously paid by the partnership and deducted from appellant's salary until the following year although appellant needed the money, since such a refund application would have revealed his failure to report the salary from the partnership as income.

Finally, the failure to ask the accountants how to treat the "salary" shown on the partnership return on his own individual return could be taken by a jury as an effort not to learn what his tax obligations were.

It may be noted, too, that appellant did report his salary from the partnership as income for the year 1968, though the Ernst and Ernst transmittal letter accompanying the partnership return did not change in form. Yet when the Revenue Agent auditing his 1967 return in June 1969, after appellant had already reported his salary from the partnership for the year 1968 asked appellant whether he had any other income than reported, he replied in the negative.

■ The filing of the income tax returns with knowledge on the part of the taxpayer that he should have reported more income than he did is enough for a finding of wilful intent to defeat and evade the tax. Sansone v. United States, 380 U.S. 343, 351–353, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). See United States v. Bishop, 412 U.S. 346, 360, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973).

The court properly charged accordingly. Judge MacMahon specifically charged that "the government must establish beyond a reasonable doubt that the defendant acted with a specific intent to conceal the other taxes known by him to be due." He charged that the Government must prove beyond a reasonable doubt that defendant "knew he had received more income than he was reporting on his income tax return, and that he knowingly and necessarily made a deliberate choice not to report all of his income for the purpose of evading the tax." Under the test of Sansone, supra, the charge was correct.

■ Appellant urges as reversible error the summoning before the Grand Jury after the indictment had been returned of Boers, the manager of the Ernst and Ernst branch and author of the transmittal letters mentioned above. It was wrong for the prosecutor to do this. United States v. Fisher, 455 F.2d 1101, 1104–1105 (2 Cir. 1972). But we find that the error did not prejudice the appellant. Boers was not called as a witness by the Government. When he testified for the defense he was asked a

single question on cross-examination about whether he recalled certain testimony he gave in the Grand Jury dealing with advice given by him to appellant on how to treat his salary. By analogy to Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, we think the testimony used on cross-examination, though wrongfully obtained, was usable for impeachment.

We find the other arguments of appellant to be insubstantial.

Affirmed.