UNITED STATES of America, Appellee,

v.

John A. IRWIN, Defendant, Appellant.

No. 78–1394.

United States Court of Appeals,
First Circuit.

Argued Jan. 5, 1979.

Decided Feb. 21, 1979.

Francis J. DiMento, Boston, Mass., with whom Henry D. Katz, and DiMento & Sullivan, Boston, Mass., were on brief, for defendant, appellant.

Charles E. Chase, Asst. U.S. Atty., Boston, Mass., with whom Edward F. Harrington, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant was convicted of two counts of tax evasion and two counts of subscribing to false returns. 26 U.S.C. §§ 7201 & 7206(1). Appellant now argues that the trial court erred in refusing to give a requested jury instruction and in giving an *Allen* charge after the jury had deliberated for less than five hours. We affirm.

During the years in question 1971 and 1972, appellant was self-employed as a sole practitioner trial lawyer and as a manager of residential real estate he owned. There was testimony indicating that his work day included a full day in court, with time out to fix plumbing in his rental properties, and evenings in the office or in client conferences at home. As a result, appellant was less than careful about his bookkeeping, to put it charitably. Appellant testified that he left all record keeping to his secretaries, whose system he did not carefully supervise, and that he left his tax return preparation up to his accountant, who received the necessary records from the secretaries.

In auditing appellant's 1971 and 1972 returns, the Internal Revenue Service was unable to find even a reasonable correlation between appellant's records and his returns. The Service therefore resorted to the bank deposits method of calculating income. *See United States v. Morse,* 491 F.2d 149 (1st Cir. 1974). Although appellant had reported no taxable income for the years in question, the Service determined that he had earned approximately $38,000 and $22,000 in taxable income for 1971 and 1972, respectively.

Appellant's theory at trial was that he reasonably relied on his secretaries and his accountant to maintain his income records and that because of that reliance, and his endless work day, he did not "willfully" evade taxes or sign false returns. Specific intent is an express requirement of both offenses. In support of this theory, appellant took the stand and explained his busy life. There was also evidence tending to show that at least $21,000 of unreported income resulted from errors by appellant's accountant. The government's theory was that appellant's sloppy records were only a front for a conscious scheme to hide income. In support of this theory, the government adduced evidence of a $1000 cash payment from a client that never showed up in the income records of appellant's law practice.

Appellant requested a jury instruction that purported to set forth his theory of the defense.[1] Appellant characterized his re-

---

1. The requested instruction read:
   "15. As illustrations of circumstances tending to point to a lack of an intent to defeat and evade income taxes or to falsify a return, you may consider, if you find it to be a fact, (a) any pressures or burdens on the taxpayer resulting from an unusually long working day, (b) his readiness to concede errors in his records or returns, (c) the extent of his cooperation with the Government agents in their efforts to arrive at his correct tax liability, (d) the taxpayer's good faith reliance (as previously defined) on

quested instruction as a counterstatement of the government's requested illustrations of the type of circumstantial evidence that tends to show wilfulness. The trial court adopted that portion of the requested charge which related to good faith reliance on others and appellant's separate instruction on reliance,[2] but refused to charge the requested illustrations, stating that there was no evidence in the record to support them. The portion of the charge relating to circumstantial proof of wilfulness is set out in the margin.[3]

■ It is settled law that a trial judge is under no obligation to deliver a requested instruction verbatim. *United States v. Coast of Maine Lobster, Inc.,* 557 F.2d 905 (1st Cir.), *cert. denied,* 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977). Our inquiry is limited to the question "whether the instruction given communicates to the jury the substance of the request." *Id.* at 909. On the other hand, over half of the circuits have held that if there is evidence supporting a defense theory of the case and that theory is brought to the trial court's attention with an appropriate request, then the jury and not the trial court should decide the plausibility of the theory. *United States v. Creamer,* 555 F.2d 612, 616 (7th Cir. 1977); *United States v. Taglione,* 546 F.2d 194 (5th Cir. 1977); *United States v. Nance,* 502 F.2d 615 (8th Cir. 1974); *United States v. Noah,* 475 F.2d 688, 697 (9th Cir. 1973); *United States v. Hagen,* 470 F.2d 110, 113 (10th Cir. 1972); *Levine v. United States,* 104 U.S.App.D.C. 281, 261 F.2d 747 (1958). Without subscribing to this doctrine

his bookkeepers and accountant and (e) any circumstances tending to impair or hinder a good faith attempt to prepare an accurate return."

2. Appellant's requested charge on reliance read:

"13. Part of the basis for the defendant's claim that he is not guilty of wilful wrongdoing is that he relied in good faith on his bookkeepers and accountant. If the defendant entrusted the duties of keeping his records and preparing his returns to his bookkeeping staff and his accountant, and if, in doing so, he honestly believed that they were qualified to perform the duties entrusted to them, and if he in good faith actually relied on them, then the defendant would not be guilty of wilful wrongdoing with respect to any item or items of income which he fully disclosed to his bookkeepers or accountant, as the case may be."

3. "In cases like this, in determining what a defendant's intention was, willfulness may be inferred from any conduct the likely effect of which would be to mislead or to conceal facts. There must be some evidence before you from which you can draw the inference that the defendant was acting willfully. You may not draw the inference of willfully [sic] solely from the understatement of taxes due. However, you may consider that with other evidence in the case.

"Among the things you may consider in deciding whether or not to draw the inference of willfulness are the following things which are usually considered circumstantial evidence of willfulness: a consistent pattern of underreporting large amounts of income over a period of years; failing to include all of a person's income in the books and records of the person's business; failure to maintain books and records; failure to maintain adequate books and records or maintain books and records which are so haphazard and incomplete as to amount to the not keeping of records at all. You may draw the inference of willfulness if you find he attempted to conceal records which would have reflected his true business activity and the extent thereof. You may consider whether or not the defendant handled his business and his income in such a fashion as to avoid making the normal records which are kept in transactions of the type involved. All of those are given merely to illustrate the types of conduct which, if you so find, gives [sic] you a basis from which you may infer intent to evade taxes.

"I want to tell you with further reference to the question of willfulness that you may consider Mr. Irwin's claim that he relied in good faith on his bookkeepers and upon his return preparer, Mr. Clarke. But you should consider that question only if you find he made a full disclosure concerning his business activity and his income to those people. If you find that he entrusted the keeping of his records and the preparation of his tax returns to his bookkeeping staff and his return preparer and that he honestly believed those people were qualified to perform the duties entrusted to them, and if you find that he in good faith fully did rely on them, then he would not be guilty of willful wrongdoing with respect to any item or items of income which he fully disclosed to the bookkeeper or the the tax preparer.

"The defendant cannot rely, however, on those who prepared his returns and handled his records if you find he failed to furnish full information concerning his income to those people."

at this time, we apply it *arguendo* in considering appellant's argument.

■ Appellant's argument is based upon a suggested refinement of the foregoing principles. Appellant would have us hold that it is reversible error to refuse to charge an illustration of circumstantial evidence negating intent, as opposed to an entire theory, when there is evidence to support that illustration. We admit that this case reveals good arguments in favor of such a rule. Appellant's argument about overwork was colorably supported by the record.[4] Moreover, we do not feel that the instruction given was as well balanced as it might have been. The government's illustrations of circumstances indicating intent were given, including some for which we can find no evidentiary support.[5] Appellant's bare theory of reliance was presented to the jury, but in language that suggested almost a due diligence duty to insure that his bookkeepers did not miss any items of income.

■ Nevertheless, we feel justified in holding that the instruction given adequately communicated the substance of appellant's request and was not so unbalanced as to require reversal. The only theory arguably supported by the evidence which was not put to the jury was that, in response to the government's trial position that appellant wilfully failed to communicate the receipt of income to his bookkeepers, any such failures of communication were the result of appellant's excessively hectic and lengthy work days. Appellant's counsel, however, failed to articulate the importance of this requested illustration to the trial court, and,

in fact, detracted from its significance by melding it with four others of dubious validity. Indeed, even in briefing this appeal, appellant's counsel fails to articulate the significance of appellant's busy schedule beyond its relevance to appellant's reliance upon bookkeepers. As written, the requested instructions simply fail to articulate appellant's theory. *See United States v. Nance, supra.* On their face, they merely reiterate appellant's reliance theory, using unnecessary verbiage. Such an unclear request is not sufficient to trigger any duty to instruct the jury. *Id.*

Insofar as appellant's requests were directed toward a reliance theory, the instructions given were adequate. Appellant's core theory that he was unaware of any failures to report income was set forth not only in the portion of the charge set out in the margin but also in the trial court's repeated explanation that wilfulness requires actual knowledge that the returns were false. At one point the trial court stated: "The word 'willfully,' as used in connection with this tax case, means to file returns which were false as to some of the entries with the bad purpose of evading a *known* tax obligation in order to defraud the government of that tax" (emphasis added).

■ Finally, any imbalance involved in giving the prosecution's illustrations, but not the defendant's, was ameliorated by the trial court's admonition that the illustrations of circumstantial proof were "merely" examples of the kind of facts that will support an inference of intent. *See United States v. Kravitz,* 281 F.2d 581 (3d Cir.

---

**4.** The evidence supporting the claims of willingness to concede errors and willingness to cooperate with the government was exceedingly slim and controverted. Because these two "illustrations" do not strike us as integrally related to the defense theory, we are not as concerned by the failure to give the defendant the benefit of conflicting evidence by including the claims in the charge. *See United States v. Fahey,* 510 F.2d 302, 305 (2d Cir. 1974) (not plain error to fail to recount an entire theory where evidence on theory very weak); *United States v. Martin,* 507 F.2d 428, 431 (7th Cir. 1974) (no duty to emphasize evidence defend-

ant considers favorable); *United States v. Creamer, supra,* 555 F.2d at 616.

**5.** We do not suggest that illustrations of types of circumstantial evidence need be supported in fact before they are appropriate for the jury. *See United States v. Kravitz,* 281 F.2d 581 (3d Cir. 1960). On the peculiar facts of this case, however, the use of illustrations favoring the government, some of which were unsupported in the record, and the refusal to use illustrations favoring the defendant which were supported in the record has a distinct element of unfairness.

1960). This limiting characterization supports our feeling that this case falls within the rule that when adequate instructions on the law have been given and the defendant's theory presented to the jury, "[t]he trial judge is under no duty to unduly emphasize certain matters which the defendant considers favorable." *United States v. Martin,* 507 F.2d 428, 431 (7th Cir. 1974).

In sum, although we feel the charge setting forth the opposing views on the issue of wilfulness could have been better balanced, we find no reversible error. The defendant's theory was presented. The relevance of the one significant "illustration" that was not charged was not made clear to the trial judge. Perhaps most important, the charge taken as a whole (*see, e. g., United States v. Pallan,* 571 F.2d 497, 501 (9th Cir. 1978)) so clearly set forth the requirement of actual knowledge of falsity in the returns that any prejudice involved in the portion attacked by appellant was cured.

Appellant raises one other issue, which we find to be without substantial merit. The jury began its deliberations at 4:10 p. m. At approximately 8:30, the foreman notified the U.S. Marshal on security duty that he doubted the jury could reach a verdict. The Marshal conveyed this message to the judge. After conferring with counsel, the judge called the jury back, and at approximately 9:00 p. m. delivered the so-called *Allen* supplemental charge.

Appellant does not challenge the content of the supplemental charge, only its timing. We note that despite the length of the trial (six days), the issue before the jury was not a complex one. Appellant conceded in his closing argument that the returns in question were wrong. The only issue was wilfulness. Moreover, the jury deliberated for two hours after the supplemental charge, received further instruction on questions relating to wilfulness, went home and slept on the matter, and deliberated for another two hours the following morning. We find no "rush to judgment" that is in any way indicative of coercion here. *United States v. Coast of Maine Lobster Co., Inc., supra,*

557 F.2d at 911. Rather, given the nature of the case and the time already spent in deliberation before the supplemental charge was delivered, we believe the trial court was well within its discretion when it gave the instruction. *See United States v. Smith,* 521 F.2d 374, 376–77 (10th Cir. 1975).

*Affirmed.*