# United States Court of Appeals
## For the First Circuit

No. 07-1578

UNITED STATES OF AMERICA,

Appellee,

v.

MARTIN ROB VANVLIET,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Court]

Before

Lipez and Howard, Circuit Judges,
and DiClerico,[*] District Judge.

Michael J. Traft, with whom Carney & Bassil, P.C. was on brief, for appellant.
Cam Barker, Appellate Section, Criminal Division, United States Department of Justice, for appellee.

September 17, 2008

---

[*]Of the District of New Hampshire, sitting by designation.

**LIPEZ**, **Circuit Judge**. Martin Rob Vanvliet appeals from his conviction and sentence for interstate travel with the intent to engage in an illicit sexual act, 18 U.S.C. § 2423(b). We affirm his conviction, but remand for resentencing in light of Kimbrough v. United States, 128 S. Ct. 558 (2007), which was issued subsequent to the sentencing in this case.

## I.

In October 2001, Waltham, Massachusetts police detective Timothy King conducted an undercover sting operation that targeted persons using the internet to arrange sexual acts with minors. On October 26, while posing in several internet chat rooms as a fifteen-year-old girl named "Michelle" from Waltham, Detective King was contacted by Vanvliet, who identified himself as "Rob" from New Jersey. During this online conversation, Vanvliet inquired whether "Michelle" was interested in older men, stated that he "love[d] younger girls," that he was "horney (sic)," and that he would like "to plan some fun activities," a "good time together," and "some sexy fun," which he described as "hugging, kissing . . . and more." He asked "Michelle" to describe her breasts, and stated that he "would love to turn you on" and "love to feel you." Vanvliet offered to drive from New Jersey to Massachusetts in the near future to meet "Michelle." The two exchanged email addresses and agreed to talk again. Near the end of their online conversation, Vanvliet wrote: "kisses . . . all over . . . your body."

-2-

Over the next three weeks, Vanvliet and "Michelle" continued their online and email conversations, twice trying unsuccessfully to arrange trysts, and finally agreeing that Vanvliet would drive from New Jersey to meet "Michelle" at 5:00 p.m. on November 19 at a Dunkin' Donuts located in a Waltham strip mall. During these communications, Vanvliet assured "Michelle" that he would not force her to do anything that she did not want to do, but if they did anything, it would be "safe."

Before the appointed time on November 19, Detective King and his colleagues set up undercover police surveillance near the Dunkin' Donuts parking lot. At some time between 4:30 and 5:00 p.m., Vanvliet was observed driving slowly past the Dunkin' Donuts and scrutinizing the nearby area. Vanvliet continued driving down the road past the Dunkin' Donuts, but a minute or two later, he returned in the opposite direction, again canvassing the area near the Dunkin' Donuts. Detective King, who was following Vanvliet in an unmarked police vehicle, saw Vanvliet look in his rear-view mirror, then proceed to drive away from the area at a high speed. At the next intersection, Vanvliet put on his right turn signal, but abruptly made a left turn.

Detective King immediately pulled Vanvliet over for speeding and inquired whether Vanvliet had come to Waltham to meet a fifteen-year-old girl. Vanvliet responded: "I wasn't going to do anything. I was just curious." Vanvliet consented to a search of

his vehicle's trunk and told Detective King that he had used the laptop in his trunk to communicate with "Michelle" online. Detective King asked Vanvliet if he could take the laptop into police custody. Vanvliet expressed concern because the laptop contained important work files, but when Detective King assured Vanvliet that he could make arrangements to return the work materials to him, Vanvliet agreed to the seizure. Detective King let Vanvliet go with a speeding citation.

Subsequent police searches of Vanvliet's laptop revealed remnants of Vanvliet's prior online and email communications with "Michelle," pornographic photographs of prepubescent girls, and several unused condoms in the laptop case's side-pockets. On November 22, Vanvliet contacted Detective King to obtain his work files, and King responded that he would email them. Two days later, Vanvliet sent Detective King the list of the work files he needed. Detective King attempted to email Vanvliet the work files, but repeatedly received error messages that the files were too large to transmit. After several such attempts, Vanvliet instructed Detective King to cease his transmission efforts, claiming that he since had produced duplicates of the requested work files. On December 27, Vanvliet informed Detective King of his opinion that he had never voluntarily consented on November 19 to the search and seizure of his laptop.

In October 2002, Vanvliet was indicted on one count of interstate travel with the intent to engage in an illicit sexual act with a minor, 18 U.S.C. § 2423(b), and one count of possession of child pornography, id. § 2252A(a)(5)(B). The government eventually dismissed the child pornography charge. Before trial, Vanvliet moved to suppress all evidence seized from his laptop on the alternative grounds that he had never given consent to the search, or if he had, that Detective King had coerced his consent. After a four day evidentiary hearing, the district court denied the suppression motion.

After the government presented three days of evidence at the trial, the jury retired to deliberate on January 31, 2006 at around 2:30 p.m. The court recessed for the day at 4:30 p.m. without a verdict. The jury resumed deliberations the next morning at 9:00 a.m. At 11:30 a.m., it asked the district court for a clarification concerning the intent element of § 2423(b), viz., whether the government was required to prove that Vanvliet had intended to engage in sexual acts with "Michelle" on November 19, or only that he had intended to do so at some point in time. The court instructed the jury that the government must prove the former fact. At 1:30 p.m., the jury asked the court for a copy of Detective King's police report and a transcript of his trial testimony concerning his November 19 traffic stop of Vanvliet. Shortly thereafter, before the court had answered this jury

request, the jury notified the court that "[f]ollowing extensive deliberations, the eleven of us are split 6-5. How do we proceed from here?"[1]

The district court consulted with government and defense counsel, and defense counsel asked for a mistrial because "we know the count." The court denied this defense motion. Instead, it said it would give a so-called modified Allen charge, to which neither side objected. See Allen v. United States, 164 U.S. 492, 501 (1896). The delivered charge read:

> I have two questions from you and let me first answer the second one. While you have disclosed your vote, I want to direct you should it change, direct you not to let us know again what your vote is. It's really part of your deliberations that we don't want to know, but you had indicated following extensive deliberations, the eleven of us, I won't disclose the split, how do we proceed from here?
> I'd like you to try again to deliberate. Those of you who believe that the government has proved the defendant guilty beyond a reasonable doubt should stop and ask yourself if the evidence is really convincing enough given that other members of the jury are not so convinced, and those of you who believe that the government has not proved the defendant guilty beyond a reasonable doubt should stop and ask yourself if the doubt you have is a reasonable one given that other members of the jury do not share it.
> None of you should hesitate to change your mind if after reconsidering things you're convinced that other jurors are right and that your original position was wrong, but remember

___

[1]After one juror was excused for illness, the parties had consented to continue the trial with only eleven jurors.

-6-

> this, do not ever change your mind just to get the case over. In the end, your vote must be exactly that, your vote. As important as it is for you to reach a unanimous agreement, it is also important that you do so honestly and in good conscience. Bear in mind that the failure to come to a unanimous decision is itself a decision. It means that the government has not proved the case beyond a reasonable doubt to a jury unanimously. So, I'm asking you to go back and try again under those circumstances.

With respect to the jury's other question, the court noted that Detective King's police report was never admitted in evidence at trial, and that a redacted transcript of King's testimony concerning the traffic stop would not be available "by the end of today." At approximately 4:30 p.m., the re-instructed jury reached a unanimous verdict of guilt beyond a reasonable doubt.

During Vanvliet's sentencing, the district court expressed disagreement with the Guidelines' policy of imposing a two-level enhancement for Vanvliet's use of a computer, noting that computers routinely are used to commit most § 2423(b) offenses. It imposed a 46-month Guideline sentence, however, observing that a district court's disagreement with Guidelines policy would not support a decision to impose a below-Guidelines sentence. Vanvliet now appeals from both his judgment of conviction and his sentence.

**II.**

**A. Suppression Motion**

Vanvliet first contends that the district court erroneously determined that he voluntarily consented to his

computer's confiscation because it was only Detective King's false promise to arrange a prompt return of critical work-related material on the computer that induced his consent.

Consensual searches are a recognized exception to the Fourth Amendment's warrant requirement, United States v. Vilches-Navarrete, 523 F.3d 1, 15 (1st Cir. 2008), but the government bears the burden to prove by a preponderance of the evidence that defendant or an authorized third party gave the consent voluntarily, United States v. Diaz, 494 F.3d 221, 225 (1st Cir. 2007). Voluntariness is a question of fact that turns on the district court's comprehensive assessment of the totality of the circumstances attending the interaction between defendant/third party and the searching officers. United States v. Luciano, 329 F.3d 1, 9 (1st Cir. 2003). "'[I]f under all the circumstances it has appeared that the consent was not given voluntarily - that it was coerced by threats or force, or granted only in submission to a claim of lawful authority - then we have found the consent invalid and the search unreasonable.'" United States v. Barnes, 506 F.3d 58, 63 n.6 (1st Cir. 2007) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 233 (1973)).[2] Appellate challenges to

_____

[2]Factors relevant to voluntariness may include, but are not limited to: (i) the consenter's age, education, past experiences, and intelligence; (ii) whether law enforcement officials advised the consenter of his constitutional right to refuse consent; (iii) the length and conditions of the consenter's detention and/or questioning; and (iv) law enforcement officials' use of any inherently coercive tactics. See Schneckloth, 412 U.S. at 226;

-8-

the district court's factual findings relating to the validity of the consent normally are reviewed only for clear error. <u>United States</u> v. <u>Jones</u>, 523 F.3d 31, 37 (1st Cir. 2008).

Besides evidence of police coercion or intimidation, the totality-of-the-circumstances test would require consideration of any evidence that law enforcement officers' fraud, deceit, trickery or misrepresentation prompted defendant's acquiescence to the search. <u>Moran</u> v. <u>Burbine</u>, 475 U.S. 412, 421 (1986) (noting that a waiver is voluntary if, <u>inter</u> <u>alia</u>, "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"); <u>United States</u> v. <u>Berkowitz</u>, 429 F.2d 921, 925 (1st Cir. 1970) ("Where consent [to search] is given, courts must go beyond appearances and inquire whether the consent was a 'voluntary, intentional and understood waiver of a known right, or, on the contrary, was the product of deceit, duress and coercion, actual or implicit.'" (quoting <u>United States</u> v. <u>Curiale</u>, 414 F.2d 744, 746 (2d Cir. 1969))); <u>see</u> <u>also</u> <u>United States</u> v. <u>Rosario-Diaz</u>, 202 F.3d 54, 69 (1st Cir. 2000) (finding the <u>Moran</u> requirements satisfied).

Before the district court, Vanvliet raised only two alternative arguments against finding a valid consent: (i) Detective King seized the computer without seeking – or obtaining – Vanvliet's consent; or (ii) Vanvliet's consent was solely the

<u>United States</u> v. <u>Trueber</u>, 238 F.3d 79, 95 (1st Cir. 2001).

-9-

product of Detective King's coercive tactics.  On appeal, defendant abandons these two arguments,[3] in favor of the distinct contention that Detective King tricked him into consent by promising prompt return of the work files on his laptop.

Vanvliet's failure to raise this discrete "trickery" theory in connection with his pretrial suppression motion constitutes waiver.  See Luciano, 329 F.3d at 9 & n.10.[4]  His theory depends upon specific factfinding that would have been done by the district court if the claim had been timely raised.  Lacking the necessary evidentiary record, we are unable to conduct effective appellate review.  Id.; United States v. Lopez-Lopez, 282 F.3d 1, 10 (1st Cir. 2002); United States v. Bashorun, 225 F.3d 9, 16 (1st Cir. 2000);  United States v. Nuñez, 19 F.3d 719, 723 n.10 (1st Cir. 1994).  For example, the district court heard no evidence as to whether Detective King actually and in good faith intended to make arrangements promptly to return Vanvliet's computer – or at least a copy of the hard drive's contents – to Vanvliet.  See United States v. Twomey, 884 F.2d 46, 52 (1st Cir. 1989) (finding

---

[3]In his reply brief, Vanvliet contends that he has not abandoned the two arguments that he raised before the district court and invites us to review these findings for clear error. Arguments raised for the first time in a reply brief are waived. United States v. Martí-Lón, 524 F.3d 295, 299 n.2 (1st Cir. 2008).

[4]The Criminal Rules allow the district court to grant an exception to a waiver only for "good cause,"  Fed. R. Crim. P. 12(e); see United States v. Santos Batista, 239 F.3d 16, 19-20 (1st Cir. 2001).  Vanvliet did not offer such a justification to the district court.

no clear error in district court's factual determination that a police officer's statement that he intended to obtain a search warrant anyway if defendant's parents did not consent to a search was not "coercive" because a warrant likely would have issued, and the officer's statement was "an honest expression of his good-faith belief that a warrant would issue").

Vanvliet's belated attempts on appeal to avoid the consequences of his waiver are unavailing. Although the government bore the ultimate burden to prove his valid consent by a preponderance, Diaz, 494 F.3d at 225, it need not have anticipated every possible suppression theory, or have adduced evidence to rebut legal arguments never articulated in defendant's suppression motion, see Luciano, 329 F.3d at 9. Vanvliet's motion to suppress focused solely on the issues of whether he consented, and if so, whether that consent was the product of police intimidation. Generalized challenges to the "validity" of consent cannot preserve more particularized arguments for suppression. See United States v. Coplin, 463 F.3d 96, 102 n.6 (1st Cir. 2006) (noting that "'a party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court'" (quoting United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992))).

Likewise, the mere fact that the record happens to contain some evidence that might have proved material to deciding

the unarticulated trickery theory, such as Vanvliet's reliance on Detective King's statement (<u>viz.</u>, Vanvliet's statement that he would consent "as long as [Detective King] could get [the computer] back for [my] work information"), does nothing to cure the evidentiary deficit as to other critical facts missing from the records, such as Detective King's subjective intent and good faith in promising to return the computer materials.[5]

Because Vanvliet has either abandoned or waived all of these legal arguments, we affirm the district court's denial of his suppression motion.

## B. <u>Allen</u> Charge

Vanvliet next contends that the district court erred in giving an <u>Allen</u> charge in response to the jury's announced deadlock because the instruction's language and the attendant circumstances likely would have coerced jurors into abandoning their conscientiously held views of the evidence in order to achieve a unanimous verdict. <u>See</u> <u>United States</u> v. <u>Hernandez-Albino</u>, 177 F.3d 33, 38 (1st Cir. 1999).

---

[5]Although Vanvliet argues that Detective King's unsuccessful attempts to return his computer files decisively proves the officer's bad faith <u>ab</u> <u>initio</u>, defense counsel acknowledged that Detective King tried several times to email Vanvliet the hard drive's contents, and that only a computer glitch thwarted these attempts.

### 1.  Language of the Allen Charge

We note, at the outset, that Vanvliet does not dispute that the Allen charge contained the three essential components required to insure that it was not coercive:  statements that (i) both the majority and minority jurors should re-examine their positions; (ii) the jury has the right to fail to agree on a verdict; and (iii) the government bears the ultimate burden to prove defendant's guilt beyond a reasonable doubt.  See United States v. Paniagua-Ramos, 135 F.3d 193, 197-98 (1st Cir. 1998) (noting that failure to include any of these three instructions constitutes plain error).  Rather, he argues that the district court's wording of the Allen charge constitutes reversible error because it contained two features likely to coerce those jurors who were leaning toward acquittal into abandoning their conscientiously held beliefs.

We normally review a district court decision to give a modified Allen charge for an abuse of discretion.  United States v. Irwin, 593 F.2d 138, 142 (1st Cir. 1979); see United States v. Banks, 514 F.3d 959, 974 (9th Cir. 2008); United States v. Henry, 325 F.3d 93, 106 (2d Cir. 2003).  Because defense counsel did not object contemporaneously to the Allen charge's wording, however, we review Vanvliet's argument only for plain error.  Hernandez-Albino, 177 F.3d at 37.  We will not reverse unless Vanvliet demonstrates that the Allen charge contained error which was obvious and

-13-

affected his substantial rights, and that we should exercise our discretion to reverse such an error because it "'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" Id. at 177 F.3d at 37-38 (quoting United States v. Olano, 507 U.S. 725, 736 (1993)); see Lowenfield v. Phelps, 484 U.S. 231, 240 (1988) (noting that defense's failure contemporaneously to object to Allen charge is itself evidence that the charge was not coercive).

### a. Consideration of Other Jurors' Views

Citing the ABA's recommended Allen instruction, see ABA Standards for Criminal Justice § 15-5.4 (3d ed. 1996) ("ABA Standards"), Vanvliet contends that the charge given by the district court improperly instructed jurors to consider other jurors' contrary views, whereas it should have instructed them independently to re-examine the evidence.

The challenged language did not urge a juror to defer to other jurors' opinions at the expense of his or her own independent assessment of the evidence. Rather, it properly instructed that jurors have an obligation to consult each other and discuss the evidence. See ABA Standards § 15-5.4 (noting that model Allen charge should instruct that "jurors have a duty to consult with one another," although "no juror should surrender his or her honest belief as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of

-14-

returning a verdict"); United States v. Anguilo, 485 F.2d 37, 40 (1st Cir. 1973) (observing that one justification for an Allen charge is that "jurors need to be reminded that they should deliberate together in an atmosphere of mutual deference and respect"). The district court expressly admonished the jury: "[D]o not ever change your mind just because other jurors see things differently," and "it is also important that you [reach a decision] honestly and in good conscience." See Spears v. Greiner, 459 F.3d 200, 205 (2d Cir. 2006) ("[W]hen an Allen charge directs jurors to consider the views of other jurors, specific cautionary language reminding jurors not to abandon their own conscientious beliefs is generally required."). We thus find no plain error.

b. Unequal Treatment of Jurors' Views

Vanvliet also contends that the Allen charge, by advising those jurors favoring acquittal to "ask yourselves if the doubt you have is a reasonable one," improperly suggested that the jurors can only acquit based upon a doubt about the sufficiency of proof of the charge, as opposed to believing that the defendant is completely innocent. Stated this way, according to Vanvliet, the charge suggests that a not guilty result can only be based upon a doubt, rather than a sincere belief that the defendant committed no crime.

Read in the context of the entire charge, the challenged language merely repeated the traditional formulation for acquittal:

-15-

a juror should vote to acquit if he or she finds that a review of the evidence raises a "reasonable doubt" as to defendant's guilt. Even if a juror believed that the government adduced no evidence of guilt at all, it is nonsensical to suggest that this juror would be deterred from acquitting because his doubt about the strength of the government's case was so pronounced that the juror was convinced of defendant's innocence rather than just the weakness of the government's case for guilt. There was no plain error in the instruction.

2. Circumstantial Context of the <u>Allen</u> Charge

Vanvliet next argues that, even if the <u>Allen</u> charge's language was not erroneous, five attendant circumstances made it unduly coercive. He contends that, unlike his forfeited challenge to the <u>Allen</u> charge's language, he preserved his challenge to the coercive circumstances by asking that the district court declare a mistrial. With one possible exception, however, he failed to articulate any of the specific circumstances as grounds for his mistrial request. Therefore, we review four of the five grounds only for plain error. <u>See</u> <u>Hernandez-Albino</u>, 177 F.3d at 37-38.

a. District Court's Knowledge of Numerical Split

In conjunction with his request for a mistrial, defense counsel argued that an <u>Allen</u> charge was ill-advised because "we know the count." On appeal, Vanvliet reiterates that a district court which has been informed of a deadlocked jury's numerical

-16-

split should exercise utmost caution in opting to give an <u>Allen</u> charge, should do so only as a last resort, and should first try less coercive measures (<u>e.g.</u>, a brief instruction to continue deliberations and not again to reveal numerical splits). Even if we assume that Vanvliet's bare-bones objection before the district court ("[W]e know the count.") was adequate to preserve this argument, and even if we review this argument under the less onerous abuse-of-discretion standard, <u>Irwin</u>, 593 F.2d at 142, we find no abuse.

Although it would have been reversible error for the district court to solicit information concerning the deadlocked jury's numerical division, <u>see</u> <u>United States</u> v. <u>Renqifo</u>, 789 F.2d 975, 985 (1st Cir. 1986) ("[I]t has long been the rule that a court commits reversible error if it inquires into the nature and extent of the jury's division during deliberations." (citing <u>Brasfield</u> v. <u>United States</u>, 272 U.S. 448, 449-50 (1926))), it was not reversible error for the jury to reveal its division to the court voluntarily, <u>United States</u> v. <u>Lara-Ramirez</u>, 519 F.3d 76, 85 n.8 (1st Cir. 2008); <u>Rengifo</u>, 789 F.2d at 985; <u>see</u> <u>United States</u> v. <u>Mejia</u>, 356 F.3d 470, 477 (2d Cir. 2004) (quoting <u>United States</u> v. <u>Tanios</u>, 82 F.3d 98, 101 (5th Cir. 1996)). Instead, the district court's knowledge of the numerical division of jurors favoring conviction and acquittal might create a coercive situation if circumstances suggest that minority or "holdout" jurors likely would infer that the court is

-17-

directing the <u>Allen</u> charge specifically at them, and implying that they should vote with the majority to get the case settled expeditiously. See <u>United States</u> v. <u>Ajiboye</u>, 961 F.2d 892, 894 (9th Cir. 1992) (noting that there was no record evidence that "the judge knew which jurors were the holdouts and each holdout juror knew that the judge knew he was a holdout").

The district court did not abuse its discretion in concluding that such coercive potential was not present here. First, the jury volunteered the information that it was split 6-5, a numerical division which is a far cry from a scenario where one or two "holdout" jurors might be forced to yield their conscientiously held views because they perceived themselves as isolated and outnumbered. Second, the jury did not indicate whether the majority of six favored Vanvliet's acquittal or his conviction. See <u>Gilbert</u> v. <u>Mullin</u>, 302 F.3d 1166, 1176 (10th Cir. 2002) (observing that the district court "carefully avoided eliciting information concerning the direction in which the jury was leaning," so that "the jurors could not have labored under the impression that the court was interested in what their actual decision would be"); <u>United States</u> v. <u>Daas</u>, 198 F.3d 1167, 1180 (9th Cir. 1999) (observing that the district court "did not know whether the majority was in favor of conviction or acquittal"); <u>United States</u> v. <u>Frost</u>, 125 F.3d 346, 376 (6th Cir. 1997) (distinguishing case where "the jury disclosed both its precise

numerical split and the position of its majority by revealing that it was split eight to four in favor of acquittal"). Third, the district court obviously had no idea which jurors were in the five-member minority. <u>See</u> <u>United States</u> v. <u>Banks</u>, 506 F.3d 756, 771 (9th Cir. 2007) (noting that <u>Allen</u> charge was not coercive where "the judge did not know the identity of the holdout juror"). Finally, the court explicitly told the jury that its vote was "part of [its] deliberations" and not intended for others to know, that the court would not "disclose the split," and that if it should change, the jury must "not [] let [the judge and attorneys] know again what the vote is." The judge's careful handling of the jury's disclosure was the antithesis of an abuse of discretion.

We now turn to Vanvliet's four remaining arguments, all of which we scrutinize for plain error only. <u>Hernandez-Albino</u>, 177 F.3d at 37-38.

### b. Insubstantial and Early-Stage Deliberations on a Complex "Intent" Issue

Vanvliet contends that the <u>Allen</u> charge was fatally premature because the jury had deliberated a relatively short time (in fact it was over six hours) before reporting its deadlock, and was confronted with a fairly complex factual determination (<u>viz.</u>, deciphering Vanvliet's intent from his words and actions on or before November 19, 2001) which one reasonably would expect to require much longer deliberations.

Vanvliet cannot possibly demonstrate plain error in the timing of the Allen charge. Absent some other indicia of coercion, even an arguably premature Allen charge (and we are not suggesting that this charge was premature) would not be reversible error. See United States v. Steele, 298 F.3d 906, 911 (9th Cir. 2002). Rather, the timing of an Allen charge is left to the district court's sound discretion, see United States v. Tines, 70 F.3d 891, 896 (6th Cir. 1995); United States v. Alonso, 740 F.2d 862, 877 (11th Cir. 1984); United States v. Scruggs, 583 F.2d 238, 241 (5th Cir. 1978), and is not subject to any fixed time constraints, see United States v. Martinez, 446 F.2d 118, 120 (2d Cir. 1971) ("[W]e [will] not place an arbitrary time limit on how long a jury must deliberate before an Allen charge is appropriate.").

In Vanvliet's case, the more than six hours of jury deliberations after a three day trial and the unequivocal jury declaration of deadlock amply justified the exercise of the district court's discretionary determination that an Allen charge was not precipitate. See, e.g., Rengifo, 789 F.2d at 985 (noting that, after seven hours of deliberations, the Allen charge was the "correct response to the information that the jury was at an impasse"); Andrews v. United States, 309 F.2d 127, 129 (5th Cir. 1962) (finding no plain error where Allen charge was given "one hour and five minutes after the jury had begun deliberation"); see also United States v. Sawyers, 902 F.2d 1217, 1220 (6th Cir. 1990)

("[C]ontrary to what defendant claims, an <u>Allen</u> charge coming relatively early is arguably less coercive than one coming after a jury has worn itself out after several days of deadlocked deliberations.").

           c. District Court Pressure to Conduct Speedy Deliberations

Vanvliet contends that the <u>Allen</u> charge was coercive because the district court's earlier statement to the jury during voir dire that the trial should conclude no later than January 31, 2006 pressured the jury into reaching a hasty verdict. The record discloses, however, that the court stated at voir dire only that the presentation of evidence – <u>not</u> the trial – should be concluded by January 31, and the court added that "[jury] deliberations last as long or as short as the jury wishes," and that the jurors "should never change your mind[s] . . . just to get the case over." In its <u>Allen</u> charge, the court reiterated that a juror should "not ever change [his] mind just to get the case over."[6]

           d. Failure to Give <u>Allen</u> Charge Before Jury Retired

Vanvliet also suggests that it was <u>per se</u> erroneous for the district court not to give the <u>Allen</u> charge as part of its

---

[6]Vanvliet also suggests that the jury might have perceived the district court's statement that a transcript of the police officer's trial testimony could not be obtained until the next day as an implicit recommendation that the jury should not wait for the transcript, but should reach a verdict that day. We see no such necessary implication in the court's simple statement of administrative fact.

-21-

original pre-deliberations instructions. We have not even discussed the desirability of this practice in our own circuit precedents. Hence, it could not be plain error to not give the Allen charge as part of the pre-deliberation instructions. Even where courts have endorsed such a preferred practice, there is no per se rule. See, e.g., United States v. LaVallee, 439 F.3d 670, 690 (10th Cir. 2006) ("While the preferred practice is to give an Allen charge prior to jury deliberations and along with other instructions, there is no per se rule against giving an Allen charge once the jury has begun to deliberate. In fact, this Court has found on numerous occasions that Allen charges given during deliberations were not unduly coercive.").

        e. Rapidity of Verdict's Return After the Allen Charge

Lastly, Vanvliet contends that the coerciveness of the Allen charge is evident from the rapid return of the jury verdict after the jury received the charge. Because the jury's verdict came after a significant period of reflection (over two hours), and because the factual issue of Vanvliet's intent to engage in illicit sexual activity with "Michelle" was relatively straightforward, we disagree. See Hernandez-Albino, 177 F.3d at 39, 41 (cataloging cases where post-charge deliberations of even one hour disproved "coercion," and concluding that despite obvious error, Allen charge did not affect defendant's "substantial rights" because of the length of deliberations – viz., one hour – after the Allen charge,

-22-

especially given fact that the core factual dispute – the defense's "mere presence" theory – was "relatively straightforward").

Because Vanvliet has not demonstrated any reversible error, we reject his challenges to the <u>Allen</u> charge.

## C.  Charge of Prosecutorial Misconduct

### 1.  Time of Defendant's Arrival at the Strip Mall

Vanvliet argues that the prosecutor engaged in misconduct by deliberately distorting the evidence of Vanvliet's intent on November 19, 2001 to engage in illicit sexual conduct with "Michelle."  Specifically, he contends that the government tried to obfuscate the time of his arrival at the Dunkin' Donuts to make it appear that he arrived very near the appointed time of 5:00 p.m. In fact, he argues, the evidence demonstrated that he must have arrived between 4:30 and 4:45 p.m., because Detective King admitted to stopping Vanvliet's vehicle at 4:45 p.m.  He insists that this distortion was prejudicial because, if the jury had believed that he permanently drove away from the Dunkin' Donuts well before 5:00 p.m., it would have been more likely to infer that he had abandoned his intent to engage in sexual acts with "Michelle."  Because Vanvliet did not raise this prosecutorial misconduct argument below, we review only for plain error. <u>United States</u> v. <u>Robinson</u>, 473 F.3d 387, 393 (1st Cir. 2007); <u>see</u> <u>United States</u> v. <u>Shoup</u>, 476 F.3d 38, 43 (1st Cir. 2007) (noting that appellant must establish that prosecutor's erroneous closing remarks "'so poisoned the well

that the trial's outcome was likely affected'" (quoting United States v. Henderson, 320 F.3d 92, 107 (1st Cir. 2003))). We find none.

In his trial testimony, Detective King freely admitted that he was unable to recall the exact time of Vanvliet's arrival at the Dunkin' Donuts and conceded that the traffic stop might have occurred as early as 4:45 p.m. In its closing argument, the government likewise expressly conceded that its evidence of arrival time was at best approximate and that Vanvliet might have arrived "before five o'clock," but contended that even Vanvliet's belated decision to abandon his plans to engage in sexual acts with a minor might not negate his intent under § 2423(b), see United States v. Buttrick, 432 F.3d 373, 377 (1st Cir. 2005). Thus, the record contains not one shred of evidence that either the prosecutor or Detective King knowingly or deliberately tried to conceal Vanvliet's arrival time from the jury. See United States v. Brennan, 994 F.2d 918, 926 (1st Cir. 1993) (noting that no prosecutorial misconduct claim will lie absent affirmative evidence that the government knew, or should have known, that the evidence it presented was false).

2. Defendant's Online Statements

Vanvliet also asserts that the prosecutor's closing arguments falsely characterized several statements that he made to "Michelle" in his chat room communications as indicia of his intent

-24-

to engage in sexual acts with her.  As examples, he cites the prosecutor's focus on Vanvliet's reference to "kisses . . . all over . . . your body," and the prosecutor's speculative statements that Vanvliet had lured "Michelle" to the meeting by assuaging her stated concerns that he might force her to have "real" or "unsafe" sex.

None of these challenged closing remarks even approaches plain error.  Sexual predation is unquestionably one of the permissible inferences that could be drawn from Vanvliet's initial chat room exchanges, which were replete with sexually charged allusions to "sexy fun."  See United States v. O'Shea, 426 F.3d 475, 485 (1st Cir. 2005) ("'[T]he prosecutor may attempt to persuade the jury to draw inferences from the evidence.'" (quoting United States v. Hamie, 165 F.3d 80, 84 (1st Cir. 1999))); United States v. Abreu, 952 F.2d 1458, 1471 (1st Cir. 1992) (finding no plain error where prosecutor "merely asked the jury to make reasonable inferences that defendant's lifestyle tended to indicate criminal activity"); United States v. Werme, 939 F.2d 108, 117 (3d Cir. 1991) ("The prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence.").

## D.  Sentencing

Finally, Vanvliet argues that the district court erroneously refused to consider a sentence below the recommended

Guidelines sentencing range, even though it disagreed with the Guidelines policy to enhance a sentence for his use of a computer, based on its mistaken belief that it lacked that discretion. The government correctly points out that Vanvliet's sentence must be vacated in light of Kimbrough, which held that district courts legitimately may cite their own disagreements with Guidelines policy as justification for imposing a below-Guidelines sentence. 128 S. Ct. at 575. That decision was not available to the district court when it made its sentencing decision. Accordingly, we remand the case for resentencing.

The judgment of conviction is **affirmed**. The sentence is vacated, and the case remanded for resentencing in accordance with the opinion herein.

So ordered.