# United States Court of Appeals
## For the First Circuit

No. 22-1267

CAPTAIN ALBERT BROX; KIM FERNANDES; PAUL MENTON; SONIA SIMONEAU;
MARK ANDERSON; ANDREA SHEEDY; JAMES BONDAREK; STEVEN ENNIS;
CHRISTOPHER OVASKA; JEFFERY D'AMARIO; AND TIM RICHARDSON,

Plaintiffs, Appellants,

v.

WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY;
AND JANICE KENNEFICK,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Howard, Circuit Judges.

Patrick K. Daubert, with whom Daubert Law, PLLC was on brief,
for appellants.
Ryan W. Jaziri, with whom Keith H. McCown, Jeffrey T. Collins,
and Morgan, Brown & Joy, LLP, were on brief, for appellees.

October 6, 2023

BARRON, **Chief Judge**.  Current and former employees of Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (the "Authority") appeal from the denial of their request for preliminary injunctive relief from the Authority's COVID-19 vaccine policy.  We affirm in part, vacate in part, and remand.

## I.

On August 19, 2021, the Governor of the Commonwealth of Massachusetts issued Executive Order No. 595 (the "Order").  The Order provided "that all executive department employees shall be required to demonstrate that they have received COVID-19 vaccination and maintain full COVID-19 vaccination as a condition of continuing employment."  The Order also "encouraged" "[i]ndependent agencies and authorities, public institutions of higher education, elected officials, other constitutional offices, the Legislature, and the Judiciary . . . to adopt policies consistent with this Executive Order."

The Authority is a "public instrumentality" of the Commonwealth of Massachusetts that is charged with providing "adequate transportation of persons and necessaries of life for the islands of Nantucket and Martha's Vineyard."  Chapter 701 of the Acts of 1960, as amended, §§ 1, 3.  The Authority issued its own vaccine policy (the "Policy") modeled on the Order on January 3, 2022.  The Policy requires all Authority employees to be "fully vaccinated in accordance with the CDC definition on or before

February 16, 2022," and, thereafter, "to demonstrate that they continue to maintain COVID-19 vaccinations in accordance with the CDC definition of fully vaccinated and as adopted by the Massachusetts Department of Public Health."

The Policy allows for exemptions on certain specified grounds. First, the Policy states that "[e]mployees who verify and document that the vaccine is medically contraindicted [sic], which means administration of the COVID-19 vaccine to that individual would likely be detrimental to the individual's health," can seek a medical exemption from the Policy, "provided any such employee is able to perform their essential job functions with a reasonable accommodation that is not an undue burden on the Authority." Second, the Policy provides an exemption for employees "who object to vaccination due to a sincerely held religious belief, provided that any such employee is able to perform their essential job functions with a reasonable accommodation that is not an undue burden on the Authority."

The Authority's Human Resources Department is responsible for "[r]eview[ing] requests for reasonable accommodations to this [P]olicy and engag[ing] in the interactive process and issu[ing] timely approvals or denials of accommodation requests." The Policy reserves to the Authority the role and responsibility of "[i]ssuing and maintain[ing] a current COVID-19 verification policy" and "[r]eview[ing] any approved exemptions."

- 3 -

On February 11, 2022, the appellants filed a "verified complaint" in Barnstable Superior Court that named the appellees as the defendants.  The complaint alleged the following facts.

Nine of the eleven appellants in this case submitted timely requests for religious exemptions from the Policy.  The requests were denied through form letters signed by Janice Kennefick, the Authority's Director of Human Resources.  The letters stated, in pertinent part:

> After consideration and review of the information and documentation that you submitted, we are unable to approve your request due to the direct threat your unvaccinated status would pose to the health and well-being of your fellow employees, our customers and/or our vendors. Due to the nature of your position . . . , you are expected and required to interact daily in person with your fellow employees, our customers and/or our vendors. Accordingly, we determined that an exemption from the Policy would unreasonably risk their safety as well as your own.

(Emphases added.)

On January 28, 2022, the nine appellants whose religious exemption requests had been rejected were placed on unpaid suspension based on their failure to comply with the Policy.  The remaining two appellants submitted requests for religious exemptions to Kennefick but were informed that the time for submitting such requests had expired.  These appellants were then

- 4 -

placed on unpaid suspension for their failure to comply with the Policy.

All eleven appellants were warned that failure to be fully vaccinated in accordance with the Policy would eventually result in termination. One of the appellants was subsequently vaccinated on or around February 2, 2022.

The complaint pleaded claims under 42 U.S.C. § 1983, that the appellees in administering the Policy had denied the appellants their rights under the Free Exercise Clause of the First Amendment of the United States Constitution, as incorporated against the states by the Fourteenth Amendment, see Cantwell v. Connecticut, 310 U.S. 296, 303-05 (1940), and to "[p]rivacy, [p]ersonal [a]utonomy, and [p]ersonal [i]dentity" under the Due Process Clause of the Fourteenth Amendment. The complaint also pleaded state-law claims that the appellees in administering the Policy had denied the appellants their rights to religious worship under the Massachusetts Declaration of Rights and to be free from religious discrimination under M.G.L. c. 151B, § 4.

In support of the free exercise claim, the complaint further alleged that the appellees not only had denied all the appellants' requests for religious exemptions but also had granted a medical exemption to Greg Manchester, "a Captain, akin to [appellant] Brox" who is not a party to this case. The complaint alleged in addition that Manchester's medical exemption would

expire in April 2022, at which point he would "likely be 'in the same boat' as [appellants] with [appellees] 'unable to approve' his request for religious exemption."

The complaint sought relief that included a declaration that the Policy was invalid and unconstitutional and an ex-parte temporary restraining order (TRO) that would enjoin the Authority and Kennefick, in her official capacity, from terminating the appellants. On the same day that the appellants filed their complaint, they filed a motion in Barnstable Superior Court to expedite consideration of their request for an ex-parte TRO, and the court granted the motion.

On February 14, 2022, however, the appellees removed the case to the United States District Court for the District of Massachusetts. While the appellants' action was pending in the District Court, three of the appellants, including Brox, agreed to be vaccinated, joining the one appellant who already was. The other seven appellants remained unvaccinated and on unpaid suspension.

In the District Court, the appellants requested a preliminary injunction. That "extraordinary form of relief" may be granted only upon a showing that the plaintiff "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public

interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

The appellees filed a brief in opposition to the appellants' request for the preliminary injunction. The appellees contended in their brief in opposition that the appellants' federal claims were barred by Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989), because neither the Authority, as "an agency of State government," nor Kennefick, "in her official capacity" at the Authority, are "'persons' within the meaning of § 1983 and cannot be sued in a § 1983 action." The appellees further contended that the appellants' state-law claims were barred by the Eleventh Amendment of the United States Constitution, which prohibits federal courts from supervising state officials' compliance with state law.

In a reply brief in support of the request for the preliminary injunction, the appellants disputed the appellees' contentions. The appellants also attached an affidavit and a copy of a letter in support of the merits of their various claims.

The affidavit was by Manchester, and in it he attested that he had requested a medical exemption based on a letter from his health care provider that "advise[d] against COVID-19 vaccination for the next [three] months" due to Manchester's "recent COVID-19 infection." He further attested that, while his request for the medical exemption request was pending, he had

submitted a request for a religious exemption that was subsequently denied. He then attested that on February 16, 2022, he was briefly put on "unpaid suspension" when he failed to become fully vaccinated, but was "approved to continue to work under the medical exemption" on February 21, 2022 and had "been back to work at [his] usual post, duties and schedule ever since, under the reasonable accommodations of masking and testing." The letter was from Kennefick to Manchester, and it denied Manchester's request for a religious exemption in the same manner and for the same reasons that the appellants' religious exemption requests had been denied.

The appellants argued in their reply brief in support of their request for the preliminary injunction that pursuant to the medical exemption:

> Mr. Manchester [was] working for [d]efendants on their vessels in close contact with colleagues, despite the purported direct threat (to paraphrase Defendant Kennefick) his unvaccinated status pose[d] to them, while wearing a mask and testing for COVID-19 at the start of each work week. Mr. Manchester, through his medical exemption, was able to attain the exact accommodations reasonably sought by [p]laintiffs on religious bases but wrongfully denied by [d]efendants.

(Emphasis added). The appellants went on to contend on that basis that the medical exemption granted to Manchester demonstrated that the appellees "enforc[ed] the mandate unequally, treating secular (medical) exemption requests more favorably than religious exemption requests."

- 8 -

The District Court denied the appellants' request for a preliminary injunction. See Brox v. Woods Hole, Martha's Vineyard, and Nantucket S.S. Auth., 590 F. Supp. 3d 359, 364-69 (D. Mass. 2022). This appeal followed.

**II.**

The appellees concede that "on all the present facts and circumstances, the [Authority] was not acting as an arm-of-the-state" relative to this matter. Thus, Will poses no bar to the appellants' § 1983 claims, 491 U.S. at 70-71, and the Eleventh Amendment poses no bar to their state-law claims, see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984). Moreover, because the appellants are suing Kennefick only in her official capacity, the "real party in interest is the [Authority]," see Kentucky v. Graham, 473 U.S. 159, 166-67 (1985), and so there is no concern about Article III standing with respect to the appellants' claims that name her as a defendant.[1]

---

[1] We also note that this appeal is not moot. While seven of the original plaintiffs have been terminated from their employment after not receiving vaccinations, their injuries could still be redressed by an injunctive order that, as the appellants requested in their preliminary injunction briefing below, "reinstate[s them] to their respective employment statuses and positions as they existed prior to [the appellees]' placement of [the appellants] on unpaid suspension on January 28, 2022." And the other four appellants -- Brox, Ennis, Ovaska, and Menton -- who are still employed by the Authority assert that they "remain party to this interlocutory appeal in order to enjoin their submission to an unknown number of future 'booster' doses of vaccine pursuant to the [Policy]."

- 9 -

We turn, then, to the heart of the dispute on appeal, which concerns the appellants' challenges to the District Court's reasons for concluding that none of their claims provides a basis for granting them the injunctive relief that they seek. We review the denial of a preliminary injunction for abuse of discretion, but we review embedded legal questions de novo. See Weaver v. Henderson, 984 F.2d 11, 13 (1st Cir. 1993); Lanier Pro. Servs., Inc. v. Ricci, 192 F.3d 1, 3 (1st Cir. 1999).

**A.**

We begin where the District Court began, which is with the question of whether the appellants can show that they are entitled to the preliminary injunction based on their free exercise claim. The appellants argue that the District Court erred in concluding that they cannot make that showing, chiefly by arguing that the District Court erred in holding that they failed to show that they have a "likelihood of success" as to this claim.

To explain our assessment of this aspect of the appellants' challenge, it is useful first to describe the legal framework that applies to the free exercise claim. We then will be positioned to explain both the appellants' arguments for concluding that they can show that they have a likelihood of succeeding on that claim and our reasons for concluding that, given both the specific grounds that the District Court gave for its ruling and the limited arguments that the appellees have made to

us in arguing that the ruling must be affirmed, the District Court's "likelihood of success" ruling is in error.

**1.**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion, U.S. Const. amend. I. We review a law that burdens religious exercise but that is neutral with respect to religion and generally applicable only to ensure that it has a rational basis. See Fulton v. City of Philadelphia, 141 S. Ct. 1868, 1876 (2021). Such a neutral and generally applicable law thus need not be narrowly tailored to serve a compelling governmental interest, even if the law incidentally burdens religious exercise. See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531-32 (1993).

By contrast, a law that does burden religious exercise but is not either neutral or generally applicable must be narrowly tailored to achieve a compelling government interest. Id. "To be neutral, a law may not single out religion or religious practices[,]" Does 1-6 v. Mills, 16 F.4th 20, 29 (1st Cir. 2021) (citing Lukumi, 508 U.S. at 532-34), as the government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." Fulton, 141 S. Ct. at 1877. Moreover, a law is not generally applicable if it either "'invite[s]' the government to consider

- 11 -

the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions,'" id. (cleaned up) (quoting Emp. Div., Dep't of Hum. Res. of Oregon v. Smith, 494 U.S. 872, 884 (1990)), or "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," id.

We have recently had occasion to apply this legal framework in two cases that involved a free exercise challenge to a COVID-19 vaccination mandate that included a medical exemption but not a religious one. The first of those cases was Does 1-6 v. Mills, which we decided in 2021.

Mills involved a free-exercise-based challenge to the denial of a request for a preliminary injunction against the Maine Center for Disease Control's emergency rule that required healthcare workers in Maine to be vaccinated against COVID-19 unless they could show that vaccination was "medically inadvisable." Mills, 16 F.4th at 24-29. The rule "require[d] healthcare facilities to 'exclude[] from the worksite' for the rest of the public health emergency employees who ha[d] not been vaccinated." Id. at 28. But the requirement did "not extend to those healthcare workers who [did] not work on-site at a designated facility, for example those who work[ed] remotely." Id. Thus, healthcare facilities could accommodate some workers with religious objections to the COVID-19 vaccine "provided that the

accommodations did not allow unvaccinated workers to enter healthcare facilities." Id.

In upholding the denial of the requested injunction, we first concluded that the "likelihood of success" factor pointed against granting the relief. We reasoned in doing so that the rule was "facially neutral" and that "no argument ha[d] been developed to us that the state singled out religious objections to the vaccine 'because of their religious nature.'" Id. at 30 (quoting Fulton, 141 S. Ct. at 1877). We also explained that the rule did "not require the state government to exercise discretion in evaluating individual requests for exemptions" and that "[n]o case in this circuit and no case of the Supreme Court holds that a single objective exemption renders a rule not generally applicable." Id.

We next held that, so far as the record revealed, the rule was generally applicable even though it included a medical but not a religious exemption. We explained that the record at the preliminary injunction stage did not show that the rule would "permit 'secular conduct that undermine[d] the government's asserted interests in a similar way.'" Id. (quoting Fulton, 141 S. Ct. at 1877); see also Tandon v. Newsom, 141 S. Ct. 1294, 1296 (2021) ("[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue.").

In so concluding, we noted that the Maine CDC had asserted three "mutually reinforcing" interests in providing only medical exemptions under the rule:

> (1) ensuring that healthcare workers remain healthy and able to provide the needed care to an overburdened healthcare system; (2) protecting the health of the those in the state most vulnerable to the virus -- including those who are vulnerable to it because they cannot be vaccinated for medical reasons; and (3) protecting the health and safety of all Mainers, patients and healthcare workers alike.

Mills, 16 F.4th at 30-31. We then explained, following Tandon, that the medical exemption at issue was "meaningfully different from exemptions to other COVID-19-related restrictions that the Supreme Court has considered," because in those cases "the Supreme Court addressed whether a state could prohibit religious gatherings while allowing secular activities involving everyday commerce and entertainment and it concluded that those activities posed a similar risk to physical health (by risking spread of the virus) as the prohibited religious activities." Id. at 31. By contrast, we explained, the Maine CDC's rule "offer[ed] only one exemption, and that is because the rule itself poses a physical health risk to some who are subject to it," and "carving out an exception for those people to whom that physical health risk applies" did not in and of itself necessarily undermine Maine CDC's "asserted interests in a way that carving out an exemption

for religious objectors would" because "providing healthcare workers with medically contraindicated vaccines would threaten the health of those workers and thus compromise both their own health and their ability to provide care." Id.

In addition, we concluded that the plaintiffs had not shown their entitlement to a preliminary injunction, given our conclusion that strict scrutiny did not apply, because the rule "easily satisfie[d]" rational basis review. Id. at 32. We did note, however, that "even if [strict scrutiny] did [apply], plaintiffs still ha[d] no likelihood of success," id., because the rule was narrowly tailored to serve the Maine's CDC's compelling interest in both stemming the spread of COVID-19, see id. (citing Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 67 (2020)) and "denying an exception" to the plaintiffs, id. ("If any healthcare workers providing such services, including the plaintiffs, were exempted from the policy for non-health-related reasons, the most vulnerable Mainers would be threatened.").

Then, in May of 2023, while this case was pending, we decided Lowe v. Mills, 68 F.4th 706 (1st Cir. 2023), in which seven former employees of various Maine healthcare facilities challenged the same Maine CDC emergency rule partly on the ground that it violated the Free Exercise Clause, as incorporated against the states by the Fourteenth Amendment, by allowing medical but not religious exemptions. Id. at 709-13. The district court there

had dismissed the appellants' free exercise claim on the ground that the rule was a "religiously neutral law of general applicability that [was] rationally related to Maine's legitimate public health interests, and so [did] not violate the Free Exercise [Clause]." Id. at 713. But, notwithstanding our decision in Mills, we reversed. See id. at 709.

We explained that our "decision on the plaintiffs' preliminary injunction appeal [in Mills] does not control the outcome in [Lowe] because the different procedural postures implicate different burdens, standards of review, and factual records." Id. at 712 n.10. Moreover, we noted, the appellees in Lowe did not "contend that the result in Mills [was] binding" in that appeal. Id.

We then reviewed the dismissal of the Lowe appellants' complaint de novo while "drawing all reasonable inferences in the plaintiffs' favor." Id. And "we conclude[d] that it [was] plausible, in the absence of any factual development," that the rule was not generally applicable "based on the complaint's allegations that the [m]andate allows some number of unvaccinated individuals to continue working in healthcare facilities based on medical exemptions while refusing to allow individuals to continue working while unvaccinated for religious reasons." Id. at 714.

We began our analysis by following Tandon and identifying the interests that Maine had asserted for allowing

- 16 -

only medical exemptions.  We explained that Maine had cited "[a]s its principal interest in permitting medical but not religious exemptions" to the mandate "a goal of 'revers[ing] the trajectory of falling vaccination rates in order to prevent communicable, preventable diseases from spreading in . . . healthcare facilities . . . so that all persons medically unable to be vaccinated [can] be protected.'"  Id. at 714-15 (second and third alterations in original).  We also noted, however, that Maine additionally "cite[d] a more general interest in 'protecting the lives and health of Maine people.'"  Id. at 715 (quoting Lowe v. Mills, No. 1:21-CV-00242, 2022 WL 3542187, at *14 (D. Me. Aug. 18, 2022), aff'd in part, rev'd in part and remanded, 68 F.4th at 725).

We then held that "it is plausible based on the plaintiffs' allegations that the medical exemption undermines these interests in a similar way to a hypothetical religious exemption" as:

> The availability of a medical exemption, like a religious exemption, could reduce vaccination rates among healthcare workers and increase the risk of disease spread in healthcare facilities, compared to a counterfactual in which the [m]andate contains no exceptions, all workers must be vaccinated, and neither religious objectors nor the medically ineligible can continue working in healthcare facilities.

Id.

Finally, we observed that Maine also had "reference[d] in passing an interest in 'safeguarding Maine's healthcare

- 17 -

capacity.'" Id. at 715 (quoting Lowe, 2022 WL 3542187, at *14). But we concluded that "[w]hile excusing some workers from vaccination for medical reasons may protect Maine's 'healthcare capacity' by making more workers available, authorizing a religious exemption plausibly could have a similar effect." Id. We thus explained that we could not "conclude, at least without more facts, that this interest renders the two exemptions incomparable." Id.

That said, we recognized that Maine also had contended that a medical exemption is "fundamentally different" from a religious exemption "because a medical exemption aligns with the State's interest in protecting public health and, more specifically, medically vulnerable individuals from illness and infectious diseases, while non-medical exemptions do not." Id. (quoting Lowe, 2022 WL 3542187, at *12) (alteration omitted). However, we concluded that, drawing all reasonable inferences in the plaintiffs' favor, it was plausible that "the inclusion of the medical exemption undermines the State's interests in the same way that a religious exemption would by introducing unvaccinated individuals into healthcare facilities." Id.

In all events, we emphasized the narrowness of our ruling, as we stressed that it was "entirely possible that additional facts might show that the two types of exemption are not comparable." Id. at 715. Indeed, we "reject[ed] the

- 18 -

plaintiffs' apparent view that the only relevant comparison is between the risks posed by any one individual who is unvaccinated for religious reasons and one who is unvaccinated for medical reasons" and agreed instead "with the Second Circuit that Supreme Court precedent 'suggests the appropriateness of considering aggregate data about transmission risks.'" Id. at 716 (quoting We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 287 (2d Cir.), opinion clarified, 17 F.4th 368 (2d Cir. 2021), cert. denied sub nom. Dr. A. v. Hochul, 142 S. Ct. 2569 (2022)). But, in the end, we concluded that "absent factual development, dismissal [was] unwarranted," as the State had not "establish[ed] that the [m]andate satisfies strict scrutiny," and "drawing all reasonable inferences from the complaint's factual allegations in the plaintiffs' favor, the complaint state[d] a claim under the Free Exercise Clause." Id. 715-18. As a consequence, we did not "determine what standard of scrutiny should ultimately apply to the free exercise claim. Nor [did] we decide whether the [m]andate survives the applicable level of scrutiny." Id. at 718.

**2.**

The appellants do not refer to either Mills or Lowe in challenging the District Court's ruling that the appellants have failed to show that they have a likelihood of success on the free exercise claim. Moreover, although the appellants premise their challenge to the District Court's "likelihood of success" ruling

- 19 -

on the ground that the Policy, as administered, is subject to struct scrutiny, they are less than clear in explaining why that is so.

For example, the appellants at times appear to be arguing that such demanding scrutiny applies because the Policy is "wrought with only secular individualized exemptions." See Fulton, 141 S. Ct. at 1877; see also Ward v. Polite, 667 F.3d 727, 740 (6th Cir. 2012) (finding an "exception-ridden" anti-discrimination policy "[had taken] on the appearance and reality of a system of individualized exemptions" that required strict scrutiny). But that characterization of the Policy appears to be wrong, given that a medical exemption is the only non-religious exemption that the Policy permits, see Mills, 16 F.4th at 30, and, we note, the appellants develop no contrary argument, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

The appellants do also appear, however, to be contending (as they did below) that the Policy is subject to strict scrutiny because, "in its implementation," it "treat[s] secular and religious exemption requests unequally, favoring the former" and so for that reason alone is not "generally applicable." Lukumi, 508 U.S. at 542-46; see also Fulton, 141 S. Ct. at 1877 (citing id.). The notion appears to be such demanding scrutiny applies

- 20 -

because the Policy is administered to allow medical exemptions for persons who pose no less risk of spreading COVID-19 than persons who are denied religious exemptions.[2]

To support the contention, the appellants point to the evidence of how the appellees treated Manchester's exemption requests. That evidence shows, they argue, that Manchester was a customer-facing employee with the same role and responsibilities as appellant Brox; that he applied for a religious exemption under the Policy but was denied it "due to the direct threat [his] unvaccinated status would pose to the health and well-being of . . . fellow employees, . . . customers and/or . . . vendors"; and that he then was granted a medical exemption under the Policy that allowed him to work in person (while masking and testing) without vaccination, after he submitted a letter from his health care provider that "advise[d] against COVID-19 vaccination for the next [three] months" due to Manchester's "recent COVID-19 infection."

Based on this evidence, the appellants argue that the Policy, as administered, provides medical exemptions that permit unvaccinated employees to work "in close contact with colleagues, despite the purported direct threat . . . [their] unvaccinated

---

[2] Appellants make no argument in their opening brief on appeal that the Policy is not neutral. They do make this assertion in their reply brief, but arguments not made in an opening brief on appeal are deemed waived. United States v. Vanvliet, 542 F.3d 259, 265 n.3 (1st Cir. 2008) ("Arguments raised for the first time in a reply brief are waived.").

status poses to them" but not religious exemptions that would permit unvaccinated employees to do the same even though their unvaccinated status poses no greater threat. And, according to the appellants, the Policy, as administered, is therefore not generally applicable -- and thus is subject to strict scrutiny -- because it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," Fulton, 141 S. Ct. at 1877.

The appellants go on to contend that the appellees cannot show that the Policy, as administered, survives strict scrutiny. To support this contention, the appellants argue that even though "the sole stated purpose" that the appellees have given for denying their requests for religious exemptions is "preventing the spread of COVID-19," the Policy as administered permits medical exemptions to persons who pose the same risk of spreading COVID-19 as "similarly situated" persons who are not eligible for medical exemptions who seek exemptions on religious grounds.

### 3.

Against this backdrop, it is notable that, in ruling that the appellants had no likelihood of succeeding on the free exercise claim, the District Court did not address the possible import of the Manchester evidence to the claim's merits. Nor did the District Court engage with the question of the level of

scrutiny to which the Policy should be subjected. Instead, the District Court based its conclusion on the following grounds.

The District Court first observed that a religious exemption is not required for a vaccine policy. But we do not understand the appellants to base their free exercise claim on a contention that a vaccine mandate must, as a general matter, contain a religious exemption. So, even if the District Court is right as a general matter in making the observation, that observation does not itself provide a basis for concluding that the free exercise claim that the appellants are bringing is not likely to succeed.

Moreover, while the District Court did also cite in support of its ruling a range of cases (though not from this court) that had rejected challenges to vaccination mandates on free exercise grounds, those precedents did not involve challenges to vaccine mandates on the ground that they were subject to strict scrutiny because they treated a medical exemption more favorably than a religious one. So, it is hard to see how those precedents provide a basis for concluding that the appellants are not likely to succeed on their free exercise claim, given that the claim is premised on the contention that the Policy is subject to strict scrutiny precisely because it has been administered in a manner that results in just such disfavored treatment of employees seeking religious exemptions.

Finally, the District Court explained in support of its ruling that "where -- as here -- a state agency offers religious exemptions, it must not administer them in an unconstitutional way," but that the appellants did not "allege[] any facts that suggest that the Authority has administered its religious exemption policy in a way that burdens some religions but not others, or that [it] has coerced [the appellants] in their religious practices." Brox, 590 F. Supp. 3d at 366 (cleaned up). But we do not understand the appellants to base their free exercise claim on a contention that, in administering the Policy's religious exemption, the appellees treated their religious beliefs less favorably than the religious beliefs of others. We understand them to be asserting only that the Policy violates their free exercise rights because the record shows that the Policy's medical exemption has been administered to treat comparably situated persons differently based on whether their request for an exemption is religious or medical in nature. Thus, here, too, we cannot conclude that the District Court's reasoning supports the conclusion that the free exercise claim is not likely to succeed.

Of course, we may affirm the District Court on an independent ground if that ground is manifest in the record. Cf.

Norris on behalf of A.M. v. Cape Elizabeth Sch. Dist., 969 F.3d 12, 28 (1st Cir. 2020). But we see no basis for doing so here.[3]

The appellees do argue that the Policy is generally applicable -- and so not subject to strict scrutiny -- for reasons having to do with the differing statutory liability that the Authority would face in denying requests for exemption that are medically rather than religiously based. The appellees assert in that regard that an employer may show that an accommodation for religious practice would constitute an "undue hardship" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., more easily than an employer may show that an accommodation for a disability would constitute an undue hardship under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. The appellees then contend that it follows that the fact that Manchester was granted a medical exemption but not a religious one fails to show that, as administered, the Policy "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." Fulton, 141 S. Ct. at 1877.

---

[3] To the extent that the appellants argue that the District Court also made adverse findings with respect to the sincerity of their beliefs with respect to their free exercise claims, we do not understand the District Court to have denied the requested relief as to those claims on the basis of any such determination, and the appellees do not ask us to affirm the District Court on that ground.

The argument depends, as an initial matter, on it being true that an employer has more leeway under Title VII to deny an exemption for an employee claiming religious discrimination under that statute than an employer does under the ADA to deny an exemption for an employee claiming discrimination based on a disability under that statute. For, it is that premise that grounds the further contention that, precisely because an employer does have that greater leeway under Title VII, the Authority's COVID-19 vaccine requirement is generally applicable as a matter of law even if, as the Manchester evidence shows, it is administered to deny religious exemptions to customer-facing employees whose risk of spreading the virus is comparable to customer-facing employees who are granted medical exemptions.

But even if we were to accept the appellees' contention about the greater leeway that an employer has under Title VII, cf. Groff v. DeJoy, 600 U.S. 447, 470-71 (2023), the appellees do not develop any argument as to why we must conclude that, as a matter of law, the greater federal statutory liability that an employer faces for denying a medical exemption from a COVID-19 vaccine mandate than for denying a religious exemption from one suffices in and of itself to show that, for free exercise purposes, the former exemption may be granted and the latter exemption may be denied to employees who pose comparable risks of spreading the virus without thereby rendering the mandate not generally

- 26 -

applicable and so subject to strict scrutiny.  Rather, the appellees simply appear to assume that it follows from the prospect of such greater federal statutory liability that granting medical exemptions to such employees while denying them religious exemptions would not trigger the application of strict scrutiny. We thus do not see how we may rely on this ground to affirm the District Court's "likelihood of success" ruling as to the appellants' free exercise claim.  See Zannino, 895 F.2d at 17.

The appellees do advance one other argument for affirming the District Court's "likelihood of success" ruling on a ground on which the District Court did not itself rely.  They argue that the record shows that Manchester "was not provided any type of long-term or permanent 'accommodation' as [the appellants] suggest, and certainly not the type of permanent, personal, exemption from the Policy that [the appellants] sought" through their religious exemptions.

But, insofar as the appellees mean in drawing this distinction to be arguing that Manchester's medical exemption is not comparable to the appellants' request for a religious exemption due to its limited duration, they make no attempt to explain how the length of the medical exemption bears on any of the appellees' asserted interests in the Policy such that granting the time-limited exemption would not undermine the Policy in the same way. Thus, once again we see no basis for affirming the ruling below on

a ground independent of the grounds on which the District Court relied. See Lowe, 68 F.4th at 715 ("We thus cannot conclude, at least without more facts, that this interest renders the two exemptions incomparable."); Tandon, 141 S. Ct. at 1296.

Accordingly, we agree with the appellants that the District Court's "likelihood of success" ruling on the free exercise claim cannot be sustained, as the reasons that the District Court gave for concluding that the appellants had no likelihood of succeeding on that claim do not suffice to show as much. Moreover, because the District Court's denial of preliminary relief as to this claim rested heavily on its conclusion that the appellants' claims failed to satisfy the likelihood of success factor, it is not evident that the District Court reached a similarly conclusive judgment as to any of the remaining factors. And, given the minimal briefing from either side on these other factors, as well as the District Court's recognition of the way that those factors may be dependent on whether the appellants can show a likelihood of success on the merits, we decline to resolve this appeal based on these "issue[s] not passed on below." Singleton v. Wulff, 428 U.S. 106, 121 (1976).

Thus, we vacate the District Court's ruling with respect to its denial of the requested injunctive relief on the appellants' free exercise claim. We leave it to the parties and to the District Court on remand, therefore, to consider the appellants' request

- 28 -

for that relief under the applicable legal framework that we have set forth above, including by considering how our decisions in Mills and Lowe bear on the appellants' request for such relief in light of the record that has been developed.[4]

**B.**

We turn next to the appellants' challenge to the District Court's ruling that they were not entitled to the preliminary injunction based on their privacy-based claim under the Due Process Clause of Fourteenth Amendment. Here, too, the District Court in

---

[4] We note that although the appellees mention that Manchester's medical exemption request was granted only on a temporary basis "and based on a note from his health care provider that, pursuant to CDC guidelines, a COVID-19 vaccination was contraindicated for three months due to Mr. Manchester's recent infection," the appellees do not develop an argument independent of the duration of the accommodation for concluding that the Policy, as administered, is generally applicable. For example, we do not understand them to argue that Manchester's medical status, in consequence of his prior infection, could provide such a basis on its own, due either to his own individual medical status or the relative volume of religious versus medical exemption requests. Cf. Hochul, 17 F.4th at 286 (holding that plaintiffs failed to establish that a vaccine mandate with a medical exemption but not a religious exemption was generally applicable in part due to the evidence in the record indicating "that medical exemptions are likely to be more limited in number than religious exemptions, and that high numbers of religious exemptions appear to be clustered in particular geographic areas").

Nor, we note, do the appellees argue that the fact the Authority was acting in a managerial capacity rather than as a regulator means we should apply a more deferential approach in determining whether the Policy is generally applicable. Cf. Fulton, 141 S. Ct. at 1878.

so ruling determined that the plaintiffs had failed to show a likelihood of success on the claim.

The District Court based its "likelihood of success" determination on the analysis outlined in Jacobson v. Massachusetts, 197 U.S. 11 (1905). It then reasoned that the Policy "does not violate any of the plaintiffs' fundamental rights under the Fourteenth Amendment," that "[s]temming the spread of COVID-19 is unquestionably a compelling interest," Brox, 590 F. Supp. 3d at 369 (quoting Roman Cath. Diocese of Brooklyn, 141 S. Ct. at 67), and that the Policy bears a "real or substantial relation" to that interest, id. (quoting Jacobson, 197 U.S. at 31).

The appellants contend on appeal, however, that the District Court did not apply the correct standard of scrutiny. The appellants argue that the District Court "ought to have strictly scrutinized and enjoined" the Policy when confronted with the appellants' "allegations and evidence" that the appellees implemented the Policy in "a manner which violated their fundamental constitutional and statutory rights." Cf. Roman Cath. Diocese of Brooklyn, 141 S. Ct. at 70 (Gorsuch, J., concurring) ("Although Jacobson pre-dated the modern tiers of scrutiny, this Court essentially applied rational basis review.").

The appellants develop no argument, however, as to why we must apply strict scrutiny in determining whether the Policy

violates their claimed rights to privacy, personal autonomy, or personal identity under the Fourteenth Amendment. Cf. id. (Gorsuch, J., concurring) ("Rational basis review is the test this Court normally applies to Fourteenth Amendment challenges, so long as they do not involve suspect classifications based on race or some other ground, or a claim of fundamental right."). Thus, any such contention is waived for lack of development. See Zannino, 895 F.2d at 17.[5]

The appellants do contend that even under rational basis review they are likely to succeed on their privacy-based Fourteenth Amendment claim. They chiefly do so on the ground that the District Court abused its discretion by "[r]esting" its "decision" on "contestable" judicially noticed facts regarding the number of deaths "caused" by COVID-19 and whether the FDA "ha[d] given full approval" to the Pfizer and Moderna vaccines. But even setting aside those aspects of the District Court's ruling, the record includes a CDC fact-sheet, to which the District Court referred, which states that "people who are up to date on vaccines, including booster doses when eligible are likely to have stronger protection against COVID-19 variants, including Omicron." And regardless of

---

[5] In their reply brief on appeal, the appellants argue that the Policy does not "[w]arrant [r]ational [b]asis [t]reatment" because the appellees are "not the legislature and [have] no delegation of [power] to implement the [Policy]." However, as explained, arguments not made in a party's opening brief on appeal are waived. See Vanvliet, 542 F.3d at 265 n.3.

whether the statements in this document are in fact true, they are more than sufficient to show the Authority had a "plausible justification" for adopting the Policy, which is all that is required to satisfy rational basis review.  See A.C. by Waithe v. McKee, 23 F.4th 37, 46 (1st Cir. 2022); see also Mills, 16 F.4th at 32; Roman Cath. Dioceses of Brooklyn, 141 S. Ct. at 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest.").

Nor is our conclusion in this regard called into question by the studies in the record that the appellants contend provide "uncontroverted evidence" that the "vaccines confer no broad public health or safety benefit in terms of reducing spread" and thus demonstrate that the Policy bears "no relation to its stated purpose, namely, preventing the viral spread of COVID-19."  For, in light of the CDC fact sheet, we do not see how we can conclude that the Policy lacks "any plausible justification."  See McKee, 23 F.4th at 47.

## c.

Finally, we come to the arguments that the appellants make in challenging the District Court's ruling denying the requested relief on their state-law claims.  We begin with their challenge to the District Court's determination that they were not likely to succeed on the merits of their religious discrimination claim under M.G.L. c. 151B, § 4.

- 32 -

The appellants contend that the District Court abused its discretion by "[m]aking [a]dverse [f]indings [r]egarding the [s]incerity of [a]ppellants' [r]eligious [b]eliefs." The District Court did state, in addressing the claim, that "the record suggests that plaintiffs' opposition to receiving the COVID-19 vaccine is based primarily on 'philosophical, medical, or scientific beliefs, or personal fears or anxieties' rather than bona fide religious practices." Brox, 590 F.Supp.3d at 366. But it is not clear that the District Court meant to make an affirmative determination regarding the sincerity of the appellants' beliefs for purposes of their state-law claim. Moreover, the District Court independently held that the appellants were unlikely to succeed on this claim, "[e]ven assuming, arguendo that plaintiffs have established a prima facie case of religious discrimination," because the appellees had "readily demonstrated that accommodating [their] religious obligations would impose an undue hardship." Id. at 366-67. And yet the appellants do not meaningfully challenge the District Court's conclusion on that score. In particular, the appellants do not engage with the de minimis standard for what constitutes an undue hardship under M.G.L c. 151B, on which the district court's conclusion rested. See id. Thus, any challenge to this claim is waived for lack of development. See Zannino, 895 F.2d at 17.

- 33 -

That leaves only the appellants' challenge to the District Court's ruling denying the requested injunctive relief based on the appellants' claim under Article 2 of the Massachusetts Declaration of Rights. There, the District Court determined that the appellants were unlikely to succeed on the claim because they failed to allege "that the Policy trenches on any religious ritual." Brox, 590 F. Supp. 3d at 365. But, although the appellants purport to be challenging on appeal the district court ruling as to that claim, they advance no argument disputing the District Court's reasoning. Thus, any challenge to that aspect of the District Court's judgment is waived as well. See Zannino, 895 F.2d at 17.

## III.

For these reasons, the judgment of the District Court is **affirmed** in part and **vacated** in part. We remand for further proceedings not inconsistent with this opinion. Each party shall bear their own costs.